(No. 6959. July 1, 1942.)

E. K. JOHNSON, Appellant, v. C. B. GREEN, A. T. GREEN
and CLIFFORD GREEN, doing business under the trade
name and·style of C. B. GREEN & SON, and STATE
INSURANCE FUND, Respondents.

[127 Pac. (2d) 770.]

Tom Felton for appellant.

Frank L. Benson for respondents.

MORGAN, J.—In December, 1937, appellant was afflicted with appendicitis and underwent a surgical operation, which disclosed a very large abscess. The surgeon thought best to drain the abscess before removing the appendix and, for that purpose, several drainage tubes were placed in the incision in appellant's abdomen. In March, 1938, the appendix ruptured and the surgeon removed it and again found

it necessary to use drainage tubes. Later, a hernia occurred in the lower angle of the scar resulting from the incision. The hernia was repaired, but appeared again, and still exists. Thereafter, appellant was employed in the laundry of respondent, C. B. Green, as a wringer man, and continued in such employment until March 27, 1941. It was his duty to lift baskets of wet clothes and drag them over a cement floor and lift clothes into and out of an extractor. Early in March, 1941, while claimant was performing the duties of his employment, he experienced a sharp pain in his abdomen. He did not cease work at the time, and made no report to his employer of the pain until about the 24th of that month. At the employer's suggestion, he visited a physician who examined him and found, in addition to the hernia above mentioned, at the lower angle of the appendectomy scar, another hernia at the upper angle thereof. It is appellant's contention that the last mentioned hernia resulted from accident arising out of and in the course of his employment by respondents, Green, on or about March 10, 1941.

The industrial accident board found that, by reason of the hernias, appellant has been totally, temporarily disabled for work since March 27, 1941 and was, at the time of making the findings, so disabled.

Finding of fact No. VII is as follows:

"That claimant's disability for work is the result of the hernia or hernias caused by a weak belly wall and that neither of said hernias is caused by or aggravated in any manner by a personal injury caused by accident while in the employ of defendant, C. B. Green."

The board made an order denying compensation, from which claimant has appealed.

[I] The law of Idaho requires an employee, who seeks compensation because of hernia, to prove that it resulted from an accident arising out of and in the course of his employment; that it appeared suddenly and immediately following the accident; that it did not exist in any degree prior to the injury, by accident, for which compensation is claimed, and that it was reported to the employer within thirty days after the accident. (I.C.A., sec. 43-1116; *Cook v. Winget*, 60 Ida. 561, 94 Pac. (2d) 676; *Hieronymus v. Stone's Food Stores, Inc.*, 60 Ida. 727, 96 Pac. (2d) 435.)

With respect to the pain appellant experienced while at work, he testified, on direct examination, that after loading the extractor he felt an ache in his stomach; that he thought he would faint and stood there a few minutes and Mr. Kite (a washer man in the laundry) "came by and I told him about it, but didn't think any more about it."

"Q. Then what happened, if anything?

"A. Then a few days after that I commenced noticing that I was getting awfully sore. Seemed like it was awfully sore in my stomach.

Commissioner Suppiger: "You mean abdomen?

"A. Yes."

On cross-examination, he testified:

"Q. When you noticed this pain—sensation that you refer to, I don't understand what you were doing at the time—will you please state. The time you experienced this sensation about which you complained that you mentioned to Mr. Kite, I don't believe I got what you were doing at the time.

"A. I had just got through loading the extractor.

"Q. What do you mean by that?

"A. I was taking the clothes out of the washer, putting them into the wringer, filling the wringer and, after getting the wringer filled, starting the motor.

"Q. You were lifting the clothes?

"A. Lifting them out of the big basket and putting—

"Q. They were wet or dry?

"A. Wet—right out of the washer.

"Q. How many do you take out?

"A. Handful, haven't any idea. Probably 10 to 15 pounds.

"Q. And it was after you had loaded this that you say you experienced this sensation?

"A. Right after turning the switch on.

"Q. You didn't notice it while lifting the clothes?

"A. No, not at all."

He also testified:

"Q. You said you mentioned that to Mr. Kite at the time?

"A. Yes.

"Q. What did you say?

"A. I had the craziest feeling I was going to faint, something I had never done in my life, just after loading the extractor, everything turned dark, thought I was going to topple over. He said at the time 'You look pale, do you feel sick?' I said I had a sick feeling to my stomach. That was all that was said about it. * * *

"What do you think is the most likely thing that caused this hernia, do you have any idea?

"A. No, I have no idea.

"Q. Do you think pulling the basket over?

"A. I couldn't say that—I don't think, although—

"Q. Do you think that caused it, just pulling the baskets?

"A. I think heavy lifting or pulling did cause it.

"Q. I asked you if you thought it did?

"A. I think they did.

"Q. Really you don't know anything definite that caused it?

"A. No.

"Q. Or any definite time it happened?

"A. That is as near as I can remember.

"Q. That is you think it either happened pulling baskets or taking clothes out of the washer or putting clothes in the wringer?

"A. Yes.

"Q. Some of those things?

"A. Yes, I think—I am sure.

"Q. Or it may have come on gradually?

"A. I can't say.

"Q. Do you know whether it came on suddenly?

"A. It is impossible to say."

He testified on redirect examination:

"Q. Mr. Johnson, did you or did you not state that you suffered a sudden sharp pain while leaning over the wringer?

"A. Yes, I did.

"Q. On or about what date?

"A. It would be between the first and tenth of March.

"Q. In other words you don't recall the exact date?

"A. No."

The evidence does not show the hernia appeared suddenly or immediately following an accident. The existence of the hernia does not appear to have been discovered until appellant was examined by the physician, at the suggestion of his employer, a considerable time after he suffered the pain. The facts of this case distinguish it from *Cook v. Winget* and *Hieronymus v. Stone's Food Stores, Inc.*, above cited, in which cases the hernias were caused by lifting heavy objects, and appeared immediately thereafter.

The findings of fact are fully sustained by the testimony and the order appealed from is affirmed. Costs are awarded to respondents.

Givens, C. J., and Budge and Holden, JJ., concur.

AILSHIE, J. (Concurring.)

Confronted, as we are, by the constitutional mandate, that this court, in the exercise of its appellate jurisdiction in industrial accident cases, "shall be limited to a review of questions of law" (Const., art. V, sec. 9, as amended November 3, 1936, 1937 S.L., p. 498) ; and the further fact, that the legislature has placed the burden of proof in hernia cases on the claimant, and *particularly*, that the "hernia appeared *suddenly and immediately* following the accident", and that it "did not exist in any degree prior to the injury by accident" (sec. 43-1116, I.C.A.), I feel impelled to concur in affirmance of the order of the Board in this case. Under these circumstances, I am not able to say there *is no evidence sufficient* to sustain the Board's order.

Holden, J., concurs.